

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID L. CHRISTIE | ) |
| Plaintiff, | ) |
| v. | ) No. 04 C 3787 |
| | ) Magistrate Judge Cole |
| MICHAEL J. ASTRUE, Commissioner of Social Security[1] | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Mr. Christie applied for Disability Insurance Benefits claiming he became disabled on May 10, 1999. His claim was denied initially and upon reconsideration, and Mr. Christie requested an administrative hearing. Following that hearing, an administrative law judge ("ALJ") found that Mr. Christie could perform some light work, and was not disabled under the Social Security Act. 42 U.S.C. § 423(d)(2). The appeals council denied Mr. Christie's request for review, and he appealed the decision to this court under 42 U.S.C. § 405(g). On January 16, 2007, I reversed and remanded the decision denying Mr. Christie benefits, citing an incomplete analysis of the record and a failure to adequately articulate the reasoning underlying the denial. Now, Mr. Christie seeks attorneys' fees and costs in the amount of $4352.75 pursuant to the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412(a);(d). Because the Commissioner has failed to meet his burden of demonstrating that his position was substantially justified, Mr. Christie's application for fees and cost is granted.

The EAJA provides that a district court may award attorney's fees where (1) the claimant is

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Fed.R.Civ.P. 25(d), Michael J. Astrue, in his official capacity only, is substituted as the defendant in this action.

a "prevailing party"; (2) the government's position was not substantially justified; (3) no "special circumstances make an award unjust"; and (4) the fee application is submitted to the court within 30 days of final judgment and is supported by an itemized statement. 28 U.S.C. § 2412 (d)(1)(a). Here, Mr. Christie is the prevailing party, no "special circumstances" are alleged, and the fee application was timely. The Commissioner does not quarrel with the amount of the award sought, which is a reasonable amount and well within the range of recent EAJA awards. *Bailey v. Barnhart*, 473 F.Supp.2d 842, 845 (N.D.Ill. 2006)($11,493.88); *Hodges-Williams v. Barnhart*, 400 F.Supp.2d 1093, 1095 (N.D.Ill. 2005)($9,275.00); *Cuevas v. Barnhart*, 2004 WL 3037939, *2 (N.D.Ill. 2004)($8,738.75). The only issue here is whether the Commissioner's position was substantially justified.

The Commissioner bears the burden of proof on that issue. *Scarborough v. Principi*, 541 U.S. 401, 416 (2004); *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004). "Substantially justified" is, of course, one of the myriad phrases in the law that has no meaningful definition. The Supreme Court has said that the phrase means "justified in substance or in the main." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Seventh Circuit has explained that a position is substantially justified if it has a "reasonable basis in law and fact, that is, if a reasonable person could believe the position was correct." *Golembiewski*, 382 F.3d at 724. The court has also set forth a three-part standard for reviewing EAJA petitions. *United States v. Hallmark Construction*, 200 F.3d 1076, 1080 (7th Cir. 2000). It requires the government to show that its position was grounded in: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory propounded. *Id.* After a review of the Commissioner's position in this case and his argument

2

against Mr. Christie's fee application, I conclude that an award of fees and costs is appropriate in this case.

At the outset, it must be remembered that the record in this case spanned over 1000 pages, and detailed a multitude of medical problems for which Mr. Christie received treatment, including surgery, from twenty different medical professionals and was prescribed twenty different types of medication, at one time or another. The medical evidence substantiated an array of medical problems: cervical and lumbar spinal pain, injuries from an automobile accident, arthritis of the left knee that will require knee replacement surgery, the removal of a cancerous kidney, gout, hand impairments stemming from carpal tunnel and/or cervical radiculopathy, depression, a passive-aggressive disorder, and alcoholism in remission. (*Memorandum Opinion and Order*, at 2-29, 35; *Defendant's Memorandum in Support of Motion for Summary Judgment*, at 7-9). All this engendered a scant, nine-page decision from the ALJ, approximately one-third of which was boilerplate.

Now, as the Commissioner related – somewhat apologetically – in briefing the review of the ALJ's decision, there is a great deal of pressure on ALJs to dispose of a great many cases in a short amount of time. (*Defendant's Memorandum in Support of Motion for Summary Judgment*, at 6 n.2). I am certainly aware of those pressures, even in the absence of a lament from the Commissioner. *See Rogers v. Barnhart*, 446 F.Supp.2d 828, 833 n.1 (N.D.Ill. 2006). The point here, however, is that when one of those many cases comes to the ALJ with such an extraordinarily long record, detailing a course of repeated treatment for a constellation of complaints, one might expect a decision that is longer, as opposed to shorter, than the norm. Of course, the brevity of an ALJ's decision is not determinative of whether the Commissioner's position was substantially justified.

But a terse decision does tend to raise the antennae in a case where there was an immense record detailing so many impairments. Or, framing the question as the Seventh Circuit did in *Golembiewski*: would a reasonable person believe that a record of this uncommon size could be appropriately discussed and analyzed in so breezy a decision? The answer, at least in this instance, is no.

One of the byproducts of the stark contrast between the depth of the record and the brevity of the decision was the ALJ's failure to adequately explain the reasoning behind her selection and rejection of various pieces of medical evidence and medical opinions. (*Memorandum Opinion and Order*, at 43, 45-48, 55). It is true, as the Commissioner urges, that there is no requirement that an ALJ address every piece of evidence in her decision, but her analysis must build a logical bridge between the record and her conclusions. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). That is the only way the court can perform a meaningful review, to which the claimant is entitled. *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). The failure to do so goes against a substantial and consistent body of Seventh Circuit law. *Id.*; *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006); *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). As such, it cannot be said that the Commissioner has demonstrated his position was substantially justified.

Some fifteen years ago, the Seventh Circuit called the requirement that an ALJ adequately articulate his consideration of the evidence "deliberately flexible." *Stein v. Sullivan*, 966 F.2d 317, 319 (7th Cir. 1992). As such, the court held in that case that because where the was evidence to support the ALJ's decision, despite the fact that the ALJ failed to consider or discuss evidence to the contrary, the district court did not abuse its discretion by denying fees. In the intervening years, as

mentioned above, the "logical bridge" requirement has become one of the court's consistent themes, and has occasioned not a few reversals of district court opinions wherein judges found ALJ's reasoning adequately articulated to allow meaningful review, but the appellate court disagreed. *See Ribaudo*, 458 F.3d at 584; *Young*, 362 F.3d at 1002; *Golembiewski v. Barnhart*, 322 F.3d 912, 914-15 (7th Cir. 2003); *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 788 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Steele v. Barnhart*, 290 F.3d 936 (7th Cir. 2002); *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001). The emphasis has not gone unnoticed at the district court level, and at least one case has found the Commissioner's position not substantially justified where the ALJ failed to build a "logical bridge." *Herron v. Barnhart*, 2004 WL 1397547, *3 (N.D.Ill. 2004).

More recently, the Seventh Circuit recalled *Stein* as holding that an ALJ's failure to meet the articulation requirement did not mandate a finding that the Commissioner's position was not substantially justified, but cautioned that there was no *per se* rule precluding attorney's fees whenever the alleged error is the failure to articulate. *Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006). Accordingly, it would seem that an EAJA award could, in some cases, rest exclusively on the failure of the ALJ to have built the required "logical bridge." This case might be a worthy candidate for such a result, but my award of fees does not rest entirely on that failure. It is, however, a significant factor in my conclusion that the Commissioner's position was not substantially justified.

The fact that a record is 1000 pages long does not, as the Commissioner intimates, lessen the "logical bridge" requirement; it makes it all the more important. When so many varied impairments are documented by the medical evidence and discussed by treating physicians it is imperative that the ALJ spend the time and space necessary to allow a reviewing court insight into her analysis. It

5

is perfectly understandable that in such a situation, the ALJ might produce a quilt of a decision, selecting some evidence or opinions as supportive of her conclusions and rejecting others. But the quilting must be described; the ALJ must explain why so many pieces of evidence or opinions were chosen over so many others that were discarded. Here, there was simply so much evidence that was not discussed – that any reviewing court would have been left to sift through on its own without guidance from the ALJ[2] – that far too much of the quilting was left to the imagination.

In addition to failing to adequately articulate her reasoning and selection and rejection of evidence, the ALJ also ignored evidence that was contrary to her conclusion. (*Memorandum Opinion and Order*, at 43-45, 48). The Commissioner argues otherwise, however, and to demonstrate that his position was substantially justified, he submits that the ALJ did not ignore any of the medical evidence, but merely summarized the voluminous record. What is more, the Commissioner submits that I did not find that the ALJ ignored a line of evidence. (*Defendant's Response to Plaintiff's Application*, at 3). The first point may be true but does not advance the Commissioner's case; the second point is simply wrong.

Again, it is true that an ALJ need not mention every piece of evidence in a record, *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), but the ALJ is not permitted to ignore an entire line of evidence that is contrary to her findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Here, the ALJ ignored the medical evidence documenting Mr. Christie's complaints regarding his trouble using his hands. I found this significant and said so – contrary to what the Commissioner argues here– because the type of work the ALJ found Mr. Christie capable of could not be performed

---

[2] My own review of the evidence in this case spanned approximately thirty pages, quite a bit more than would ordinarily be necessary and about ten times that of the ALJ's. Again, there is no minimum requirement for the length of an ALJ's decision, but this was not an ordinary record that could be done justice by an ordinary, brief decision.

6

with such impairments. (*Memorandum Opinion and Order*, at 44, 48). Indeed, although Mr. Christie raised the issue of the ALJ ignoring his hand impairments in his opening brief, (*Memorandum in Support of Plaintiff's Motion for Summary Judgment*, at 18), the Commissioner did not mention it in his review of the ALJ's discussion of Mr. Christie's impairments (*Defendant's Memorndum in Support of Motion for Summary Judgment*, at 6-9), which tends to suggest that the Commissioner was aware then that the ALJ did ignore this line of evidence, even if he has changed his position now. Neither position, however, has been demonstrated by the Commissioner to be substantially justified.[3]

Worse, the Commissioner now explains that the ALJ accommodated Mr. Christie's difficulties with grasping and grip by "finding him unable to operate pneumatic or vibrating equipment." (*Defendant's Response to Plaintiff's Application*, at 4). Perhaps the less said about such a position the better. The Commissioner's concern for the effect of extreme vibration on Mr. Christie's hand notwithstanding, the record indicates that Mr. Christie was limited in his ability to grasp small objects, not jack hammers. And the type of work the ALJ found Mr. Christie could perform – assembly work – would seem to be a poor match for an individual with such limitations, as the vocational expert testified. *See* http://www.ninds.nih.gov/disorders/carpal_tunnel/detail_carpal_tunnel.htm. This "accommodation" of Mr. Christie's is clearly an afterthought on the Commissioner's part. It is not proof of substantial justification.

I also found that the ALJ failed to adequately assess Mr. Christie's credibility. (*Memorandum Opinion and Order*, at 52-55). "In her decision, the ALJ stated that '[t]he claimant's

---

[3] Much the same can be said for the ALJ's treatment of evidence that Mr. Christie would be required to take breaks "at will" during the work day, and would most likely be absent from a job more than four times a month. (*Memorandum Opinion and Order*, at 45, 49-50).

7

complaints of disabling symptoms and limitations are not entirely credible . . . .'" (*Id.*). The ALJ failed to follow the factors set forth in SSR 96-7p as she is required to do, *Golembiewski v. Barnhart*, 322 F.3d at 915 (". . . the ALJ cannot state simply that '"the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"), and left to conjecture which parts of Mr. Christie's testimony were credible and which parts were not. And, rather that engage in the analysis dictated by SSR 96-7p, the ALJ focused on a perceived contradiction between Mr. Christie's daily activities and his claims of pain and incapacity. In so doing, she improperly failed to consider the difference between an ability to engage in sporadic, daily activities, and the capacity to work eight hours a day, five days a week. *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005). As such, the ALJ's credibility determination is akin to the one that was rejected and found, along with other factors, to require an EAJA award in *Golembiewski*. 382 F.3d at 724. It provides yet another basis for a finding that the Commissioner's position was not substantially justified here.

The Commissioner argues otherwise, but does not seem to be entirely convinced of his own position. On the one hand, the Commissioner concedes that an ALJ must give specific reasons that are supported by the record for his credibility determination, citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). (*Defendant's Response to Plaintiff's Application*, at 8). On the other, the Commissioner explains that while the ALJ may not have provided specific reasons for her credibility determination, her reasons become clear if the record was read as a whole. (*Id.*). That is simply not adequate, and again, smacks of the "implied credibility finding" rejected in *Golembiewski*. There, as here, the Commissioner defended the ALJ's credibility determination on the theory that the body of the ALJ's decision implicitly supplied reasons for rejecting the testimony. 322 F.3d at 916. The argument is no more successful here, and fails to meet the Commissioner's burden of demonstrating

8

substantial justification. *See Golembiewski*, 382 F.3d at 724.

Finally, I found that the ALJ also failed to consider the combined effect of Mr. Christie's many impairments. (*Memorandum Opinion and Order*, at 50-51). The failure was clearly contrary to both the regulations and case law. 20 C.F.R. § 404.1523; *Mendez v. Barnhart*, 439 F.3d 360, 363 (7th Cir. 2006); *Gentle,*, 430 F.3d at 868. The Commissioner argues that the ALJ's RFC determination amounted to a consideration of the combined effect of Mr.Christie's impairments. (*Defendant's Response to Plaintiff's Application*, at 6). But an RFC determination, even one limited to light work, does not necessarily mean that an ALJ considered the aggregate effect of a claimant's impairments. *See, e.g., Clifford*, 227 F.3d at 872. The Commissioner also surprisingly suggests that the court must set forth the manner in which the combination of a claimant's impairment limit his ability to work. (*Defendant's Response to Plaintiff's Application*, at 6). This, of course, is not the court's job, but the ALJ's. *Gentle*, 430 F.3d at 868-69. This is yet another facet of the Commissioner's position that contributes a finding that an EAJA award is appropriate. *See Golembiewski*, 382 F.3d at 725.

## CONCLUSION

For the foregoing reasons, the plaintiff's petition for fees and costs is GRANTED in the amount of $4352.75.

ENTERED:
UNITED STATES MAGISTRATE JUDGE

DATE: 7/31/07

9